The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's case will be called as previously announced and the times will be as allotted to counsel. The case today is State of Rhode Island v. Shell Oil Products Co., LLC et al. Appeal number 191818. Good morning. Mr. Boutros, you may proceed when you are ready. Thank you, Chief Judge Howard. May it please the Court, Theodore Boutros, on behalf of defendants, I would like to reserve three minutes for rebuttal. Yes. Thank you. This morning I plan to focus on two principal reasons why this Court should reverse the District Court's order remanding this case. First, there are two binding precedents, one from this Court and one from the Supreme Court that require reversal. This Court's decision in United States v. Swiss American Bank is controlling and holds that if the source of a claim is federal law, then the claim arises under federal law no matter how it's labeled. The Supreme Court in the AEP decision made clear that federal law is the exclusive source of tort claims based on global warming because of their inherent international and interstate nature. One state, simply put, cannot regulate or punish extraterritorial oil and gas production encouraged by another state, the federal government, or a foreign country. This is not a statutory complete preemption argument as the District Court incorrectly held, but rather a constitutional federalism issue. To paraphrase the Supreme that the only possible source of such a claim is federal law. Rhode Island's global warming tort claims, regardless of their artfully pleaded state law label, are therefore removable. The second issue that I'd like to focus on is that Rhode Island's claims are removable under the federal officer removal statute because they relate to defendants' production of oil and gas acting under federal guidance and control to assist the United States in regarding our country's energy needs. This includes a vital oil production activity on the outer continental shelf, which is federal property governed by federal law, and on the Elk Hills Naval Reserve during World War II pursuant to detailed government contracts. These arrangements reflect that the government has for nearly a century prioritized oil and gas production and repeatedly deputized private companies to achieve those objectives subject to close supervision. So we believe that the case is also removable because Rhode Island's claims challenge large swaths of that activity. Would the federal officer removal basis, does that provide removal jurisdiction for all parties? Yes, Your Honor. It does, Your Honor. It's only the Seventh Circuit's recent Baker decision that we brought to the court's attention is one of many cases that makes the point. We've demonstrated that at least one claim, and we believe all of them, touch on, are connected to or associated with activities done under the auspices of federal supervision, and therefore the entire case is removable as to all parties and all claims. This is a lawsuit for alleged misinformation. Now how does that fit into your two arguments? That's one small piece of the case in all of the claims. Excuse me, small piece of the case, did you say? It is, Your Honor. The heart of the case is that the alleged misinformation caused more consumer demand and federal government demand for oil and gas, causing more production by the companies. In the complaint, Your Honor, every single claim, a key feature is the extraction and production of oil and gas, their design defect, negligent design, strict liability. So at the heart, without the oil and gas production, there's no claim because the claim is the firming, and then that caused Rhode Island's injuries. And just to give the court a couple of... Excuse me, the allegations, once again, focus on the misinformation and the... I can't hear you, Rogeri. Sorry, Rhode Island's allegations, can you hear me now, Juan? Yes, ma'am. Rhode Island's allegations focus on the misrepresentations and the cover-up of that, and how that specifically has caused harm to the citizens of Rhode Island. That's one piece of it, Your Honor. They have a public nuisance claim. The very first component when one looks at their claims is that it's the oil and gas production that caused the They claim, as part of that, to be sure that statements, which we say are wrong, but that statements about the effects of oil and gas consumption were misleading, but that's just one piece of it. If we look at it, they claim that the products were defective as designed because the consumption of them caused global warming, which caused their injuries. So it's one piece of it, and I should say, as to federal officer removal, the fact that they have a misrepresentation claim embedded in their claim doesn't mean that their claims don't relate to or are associated with or connected to all this activity on the Outer Continental Shelf, which was pursuant to detailed contracts. All the plans have to be approved, and one thing that I think we could have emphasized... Your Honor, it relates directly to that. In fact, the Outer Continental Shelf Lands Act, Section 1801 and 1802 declare that that statute was passed and amended in 1978 to command the Secretary of Interior to, one way or another, exploit and mine the resources on the Outer Continental Shelf. The government could have done it in a number of ways. It could have formed its own oil company or it could have contracted with folks to produce it directly to the United States. The method chosen was the leases, and the leases have to be approved. The production plans have to be approved every five years by the Secretary of the Interior. The Secretary of the Interior, the President, can command that the oil be all sold to the United States and can direct it to different agencies of the United States. This is government property and government oil, and it's a huge resource, as much as a third of oil and gas production in the United States. The plaintiffs in their brief suggest this is some sort of side point. This is a major piece of their claim. Their claims directly connect to oil and gas production on the Outer Continental Shelf under the supervision of the United States government. A lease is a contract, Your Honor, in the Watson case from the Supreme Court. That helps us. The Supreme Court in Watson, the claim was that detailed government regulation of tobacco somehow created federal officers, but the Supreme Court said government contracts are different where a private party contracts with the government to assist the government in carrying out its obligations and does something for the government by contract that the government would otherwise have to do itself. That's the classic federal officer situation where the private company is acting under the authority of the federal government. The other example we've given, Your Honor, is the Elk Hills Naval Reserve where Standard Oil, Chevron's predecessor, during World War II, the contract in the record, I think it's J.A., page 240, President Roosevelt signed it. At page 198 of the joint appendix, we cite the GAO report that notes that during 1945, there were 65,000 gallons of oil produced to help the war effort by Standard pursuant to a contract that gave the government complete and absolute authority over what would happen at that field. The Baker decision really captures this from the Seventh Circuit. That's a classic example of federal officer activity, and we've easily met that standard. It's the kind of case that belongs in federal court for that reason alone. Going back to, Rhode Island argues that the harms caused are not from the extraction of fossil fuels per se, but from your efforts to mislead, alleged efforts to mislead, and promote their product by misinformation. Your Honor, I want to emphasize that's part of the thing, but I'll just direct the court to a couple of examples. Page 26 of the joint appendix, this is a quote. Defendants' production, promotion, and marketing of fossil fuel products, then they go on to say with their alleged concealment. You're taking it out of context, aren't you?  Read the rest. Yes, simultaneous concealment of the known hazards of those products and their champing of anti-science campaigns actually approximately caused Rhode Island's injuries. If you take out the production, Your Honor, there's no global warming, even under their allegations. They also say that decades of scientific research show that pollution from the production and use of fossil fuel products plays a direct and substantial role in the unprecedented rise in emissions of greenhouse gas pollution. I respectfully submit that you cannot decouple the misrepresentation claim from oil and gas production. I counted up 120… They're not saying that they're objecting to the production. They're saying they're objecting to the misinformation. The alleged misinformation, which caused more production, which caused more consumption, which led to global warming around the Earth. They absolutely object to the production. That's the whole basis of their claim that too much oil and gas is being produced and consumed and heating the Earth's atmosphere, and they say that the misrepresentations caused more of it to be produced. There's no getting around that. It's all about the emissions. I counted up 124 places in their complaint where they talked about the emissions. Are they saying that the misrepresentation impacted market forces? They're not saying that you couldn't operate. They're saying that it impacted market forces, and therefore the misrepresentations are what caused the harm. That's one part of their claim, Your Honor, but they want an injunction to abate the things that are causing their injuries, which include the production and consumption of oil and gas that causes the alleged heating of the atmosphere. I don't think there's any way to read this complaint other than it seeks to punish oil and gas production. It seeks to punish and redress alleged statements about it, and I repeat that those claims are baseless, but it's part and parcel of a claim that there's too much oil and gas production and too many emissions that are causing global warming. I would just say, Your Honors, the nuisance claim has misrepresentation claims in it, but they claim there's a design defect, a strict liability that oil and gas itself is They're not asking you to stop production. They're asking you to stop misinformation. Your Honor, the way I read the complaint, and under federal office removal, it's the defendant's reading of the complaint that governs. The Seventh Circuit said when there are competing theories of what the nature of the claim is, the defendant's reasonable agree with you that there's federal office or removal, because if we don't, then we've got the whole other statutory interpretation as to whether there's federal jurisdiction, which is why I assume you started out with that. Yeah, and Your Honor, maybe should I address that point right now? Yes, please. Because I think it's, as the court knows, courts have been grappling with this issue, but we believe that the Seventh Circuit in the Liu Hongzhong case had the right result there, that the plain language of the 1447D just very clearly says that an order remanding a case to the state court from which it was approved pursuant to section 1442 or 1443 shall be reviewable by appeal. Counsel, let me just jump ahead a little bit on you. If we disagree with your arguments on federal officer removal jurisdiction, and if we disagree with your argument that is encapsulated by Liu Hongzhong, but rather we are closer to the mayor and city council of Baltimore, is there another argument that you have for why the remand is reviewable by us? Well, Your Honor, we have other grounds, but they are not covered by the exception to appealability. So you have to prevail on this battle between the Seventh on one side and the Fourth and perhaps several others on the other side. Is that right? To reach the other questions, Your Honor. So it is an important issue. And if I may, just to address how the other circuits have addressed this, as the Supreme Court said in the Yamaha case under 1292, order means the entire order when you're talking about appealability. And the Tenth Circuit, for example, I think, you know, said it was a close call on the textual analysis. But we believe that there's... But respectfully, that doesn't make any sense because you have two specific exceptions. And if it is order, then it means that all you have to do is maybe have a conceivably facially valid argument for a federal officer and then everything else which the statute says can't be reviewed then gets reviewed. That's true, Your Honor. And the reason that that makes sense is because the statute speaks in terms of order, not issues. And there's simply... What do you make of the two exceptions? The two exceptions, Your Honor, Congress determined because it's so important to ensure that cases where federal officer activities are involved should be appealed, that under those circumstances the entire order can be reviewed because once one issue is up on appeal, there's no reason for this court to say there's a really strong different argument. We're not going to look at that argument. We're only going to look at federal officer removal. There is a reason, counsel, and the reason is that Congress said those other bases are unreviewable. But, Your Honor, just if I can go... I never have I seen a case where the statute itself really contains the entire argument. The 1447d refers to first an order remanding a case to the court from which it was removed is not reviewable on appeal. And then in the very same sentence it uses the word order again, same phrase, an order remanding a case to the state from which it was approved pursuant to section 1442 or 1443 shall be reviewable. So order can't mean something different within the same sentence. And so Congress made the sensible decision that most of the time there's no appeal, but where 1442, federal officer removal is present, the order can be reviewed. And that's how the court looked at it in the off. But your argument swallows the whole can't be reviewed portion of that statute. Oh, no, it does. Your Honor, it does not because it only of the exceptions only apply when they apply. But if we found no federal officer, you're saying that we could go on and review everything else? Yes, Your Honor. And that's what the Seventh Circuit found in Lujan Hall. Yes, but in the context of the entire statute, counsel, why is it unreasonable to say that that provision means to the extent based on 1442 or 1443? Why is that an unreasonable reading? Because that's reading additional words into the statute, Your Honor, that are not contained in it. It says an order. It does not say to the extent it's based on these issues. It says an order that was removed pursuant to those two provisions. This order, this case was removed pursuant to section 1443. So everything about that order would be reviewable? Yes, Your Honor. Everything about that order? Every single thing about that order. And, of course, this court could determine that it's only going to focus on particular issues. Our federal common law issue, we think if the court reviews that, it doesn't need to go any further because we think this case arises under federal law. State law can't apply here. And so if the court wants to short-circuit that additional review, it could rule in our favor on that point and not have to reach any of the other grounds. And so it's not the case that the court needs to review every ground in every removal case. If there's a different ground that provides a basis for removal, that's all that needs to be addressed. Let me interrupt you for a second and ask the courtroom deputy. Dan, by my count, we've gone a little over time. Is that how you see it as well? Yes, Judge. Two minutes over. The 17 was granted. Yes, sir. Judges Torea, Thompson, do you have additional questions at this time? None at this time. No. All right. Thank you. Counsel, if you would mute for the time being. You have reserved some time. And, Attorney Scher, I see that you are with us. And if you are unmuted, you may proceed. Thank you, Chief Judge Howard, and may it please the court. Let me go straight to counsel's primary assertion here, which is that there is a fair reading of the complaint that does not focus on the disinformation campaign and the misrepresentations which were made in the state of Rhode Island as well as elsewhere and led to the injuries in the state of Rhode Island as well as elsewhere. This is the nub of the complaint, as Judge Smith found below and as the Fourth Circuit, the Ninth Circuit, and the Tenth Circuit have all found in their review of indistinguishable cases. As master of the complaint, the state as sovereign has asserted these well-established state law claims based on a multi-decadal campaign of deception and lies, attacks on science and scientists, all of which were intended by the industry to vastly increase their production, which led to increased emissions, which led to the injuries being suffered today. You cannot fairly read the complaint, as counsel attempts to do, to divorce the deception from every single one of the claims that are asserted. For instance, with respect to public nuisance, the assertion is that these defendants participated in the creation of the nuisance through their disinformation campaign and the misrepresentations and the failures to warn. Product defect, design defect, is based on both the failure to warn and the fact that the campaign of disinformation deprived reasonable consumers of the ability to understand the dangers of profligate use of the defendants' products. And trespass is based on the foreseeability and the participation in the creation of the problem by this disinformation campaign. The defendants attack a straw case. This is not a case that involves any challenge to any regulation, federal or state. It doesn't challenge any permit held by anyone. It doesn't challenge any emissions by anyone. It's not a challenge to any treaty or contract or international behavior of any kind, and it seeks no relief outside of the state's jurisdiction. The abatement remedy to which counsel referred is to obtain measures to mitigate and adapt to the injuries that are occurring. A simple example would be the building of seawalls. But this would all be within the state of Rhode Island. The emissions are the delivery mechanism of the state's injury, but they're not the source of the tort nor the key to the remedy. Why aren't they federal officers? Sure, Your Honor. And by the way, that's the only issue that this court has the jurisdiction to address. That's why we want to start there. So you have to look at two steps under the federal officer statute. First of all, were the defendants acting under a federal officer? And second, is the conduct complained of related to that relationship with the federal officer? And this is a path now that three other sibling circuits have already been down, all of whom concluded that there is no federal officer removal jurisdiction. The Ninth Circuit held that each of the three proffered grounds identical to the ones here. So you've got the provision of gasoline. Counsel, let me interrupt you for a second. We're going to pause everything while our IT department makes sure everything's okay. My apologies. He disappeared from my screen, too. Dan, you're there? I am, Judge. I'm trying to find out what happened. And we're looking into it? Okay, thank you. Yes, Judge. For the sake of the public gallery, we lost a connection with one of our judges momentarily. Chief Judge Howard, would you mind telling me where I am on my time? Yes, I was just looking at that myself. As I see it, you still have 14 minutes left. I agree, Judge. I see the same thing. Just getting warmed up. In the middle of one of these remote arguments, I lost power. That's right, Judge. I think we got you back on by telephone, if I remember correctly. That's exactly right. Glitches arise sometimes. I had the same thing happen, Your Honor. Was I the only one disconnected? Yes, Judge. All right, well, I'm back. All right. Counsel, when you've gathered your thoughts, you may pick up where you left off. Thank you, Your Honor. The Ninth Circuit looked at exactly the same evidentiary proffer for federal officer removal as Your Honors have before you and concluded that neither the NEXCOM provision of gasoline to military bases, nor the Outer Continental Shelf lease operations, nor the Elk Hill Reserve connection was sufficiently connected to rise to the level of federal officers. They didn't reach the issue of whether our claims are related to that relationship of acting under. The Tenth Circuit only examined the Outer Continental Shelf relationship and agreed also that there was neither an acting under nor a sufficient relationship between the claim and that conduct. And the Fourth Circuit held that the NEXCOM leases did not satisfy acting under, that the Outer Continental Shelf leases didn't satisfy either acting under or for or relating to that relationship. And with respect to the Elk Hill contract, the court doubted that there was acting under relationship there, but that it certainly didn't satisfy the for or relating to issue. I'm going to take them in backwards order, if I may. That is... That's fine, but just before you do that, I want to just ask you one quick question. Is the bottom line that the misinformation or deceit type allegations actually are not... You don't need that hook to prevail in your argument? Correct. Okay, go ahead. But I was going to talk about that first because it's actually the most obvious reason that there's not a federal officer removal jurisdiction here. And that is that the federal government has no interest in disinformation, deception, and the kind of failure to warn conduct that is at issue in the case. So even if you were to find, and you should not, by the way, but even if you were to find that the provision of gasoline to federal bases is acting under a federal agent, there's no connection to the plaintiff's claims here sufficient to support the jurisdictional removal anyway. I was trying to figure out, just based upon what you just said, if the federal government in approving these leases has necessarily factored in the misrepresentation calculus in regulating this whole industry. Well, you know, if you look at some of the earlier cases, for instance, the Fifth Circuit's decision in Winters, which the Supreme Court in Watson said, we don't necessarily decide that a private actor acting under a federal contractor can do it, but acknowledge that in that case it had happened. What you had was the production of Agent Orange for the war effort, and it was a failure to warn claim asserted by the plaintiff for personal injuries, and the federal government had controlled the warnings that were with this product that was not otherwise commercially available. And the Fifth Circuit said under those circumstances, the failure to warn claim implicates the federal officer relationship because the government controlled the warnings. If you look at the Sawyer case out of the Fourth Circuit, which was an asbestos, military use of asbestos on naval ships, failure to warn case, you have the same thing. There was proof proffered by the defendant in that case that the government had not only had the conduct been involved in naval vessels, which was a government function, but that the warnings that were provided were specified in the federal contract, and that the government, by the way, knew more about it than the contractor who provided the asbestos-containing materials. You had the same thing also in asbestos failure to warn case in the Light case, L-E-I-T-E out of the Ninth Circuit, which is in our brief, the same thing. So in those relationships where the courts have found that federal officer removal exists, and by the way, the Fourth Circuit applies the looser standard of causal connection, just for or relating to, it's very different from what we have here. And that's why the Fourth Circuit, the one that had found... Explain how you see the difference. Sure. Well, first of all, the relationships in these contractual relationships are arm's length for the company's private benefit, economic benefit. In all three of these cases, it's a commercial relationship. The government is not using the oil and gas that's being produced for a war effort, for example, and the government is not... Part of what they're doing is for the national reserves. Let's talk about the Elk Hill Reserve because that is actually very clear, and it's discussed in detail in both the Fourth and Ninth Circuit decisions. The original contract was intended to preserve the oil in the ground of which Chevron's predecessor, Standard Oil, owned an undifferentiated part. And so the contract, the unit production contract, talks about preserving the corpus in case it's needed for a national emergency and allowing production sufficient so that Standard Oil can take its share out of the ground. And the contract is very... This is the 1944 contract. It's very clear on this. In paragraph 8, for example, which appears in Joint Appendix 228, it is expressly recognized by Navy and Standard that this contract does not and cannot in and of itself authorize the production of any of Navy's share from the reserve. And Section 4B at Joint Appendix 232 simply says that to the extent practicable, the reserve has to be managed to such extent as will so far as practicable permit production from the shallow oil zone to be maintained at a rate sufficient to produce therefrom, not less than 15,000 barrels of oil per day, which is intended to provide Standard with its share, its ownership share. And then Section 7 says, Standard shall have... This is at Joint Appendix 237. Standard shall have the right to take delivery and make such disposition of the production allocated to it, here under as it may desire. There is no evidence that any oil was produced for the Navy from the reserve under this original contract. And, in fact, now we turn to the reference to the Naval Petroleum Reserves Production Act of 1976, which, by the way, was not mentioned in Appellant's opening brief, only in their reply. So we haven't yet had a chance to respond. But in the NPRPA, Congress determined that the Navy no longer needed to maintain a petroleum reserve for a national emergency. That's a quote from Chevron USA v. United States 110 Fed Claim 747 at page 754, a 2013 case. The Department of Energy operates... That was not in any of your briefs, right? No, Your Honor, because they didn't argue about this... I understand that. I think you should write a letter mentioning it and file it, say, within 10 days. Yes. Happy to do that, Your Honors. And the GAO website that they cite in their notice of removal, if you go to that, it explains what happens as following. They say, the Department of Energy operated the field after 1976, quote, but Chevron and the government share production revenues and expenses in proportion to their ownership shares. And then it continues that in 1976, Congress passed the NPRPA, quote, authorizing full commercial development of the reserves. The crude oil, natural gas and liquid products produced from the reserves were sold by DOE at market rates. In other words, what happened was that they opened up what had formerly been a reserve preserving petroleum for use in the event of a national emergency, which never occurred for commercial production, sold it to private companies like the defendants in this case. And ultimately, the oil field was sold to one of the other defendants, Occidental Petroleum, I believe, in the 2000s. So revenues from that were deposited to the U.S. Treasury, but it was like the Outer Continental Shelf production. They were simply making the resource available for the commercial market. And there is no case holding that a commercial relationship between the government as a seller or lessor and a private party that profits from an activity, this is just like logging on federal lands, mining on federal lands, grazing on federal lands or the Outer Continental Shelf. It's a commercial relationship regulated, of course, and subject to inspections and quality controls, but for private profit. If you look at the statute itself, the NPRPA directs the government in Section – this is 10 U.S.C. Section 7422C1B to preserve – to produce the reserves at the maximum efficient rate consistent with sound engineering practices and to – and this is in Section C1C – subsection C1C – sell or otherwise dispose of the United States share of petroleum produced from the reserve. Each sale of the United States share of petroleum shall be made by the Secretary – at the time it was the Secretary of the Navy, now it's the head of the Department of Energy – shall be made by the Secretary at public sale to the highest qualified bidder. So this is not actions that are undertaken for a fundamental government purpose like fighting a war under direction and control, doing something that the government would have to do itself. It's making a public asset available for private purchase, subject to regulation and oversight. And there's no case that says that that kind of a relationship is an acting under relationship for a purpose of federal removals statute. And I would just – I know I've gobbled up a bunch of my remaining time. The Tenth Circuit's analysis of the – of Exxon's Outer Continental Shelf leases is exactly the right – is exactly the right analysis. It tracks – it tracks these issues virtually the same with respect to the OCS and with respect to the production from the – from the – from the Alkyl Reserve. And, again, the Fourth and the Ninth Circuits agreed looking at the same evidentiary proffer. I would like to just briefly turn to the issue of the scope of the appeal. And, again, the Tenth, Fourth, and Ninth Circuits have addressed these same issues. The Tenth Circuits, like this Court's, was to know that there wasn't an earlier precedent. But in all of them, the context of words matters. And the exception clause, as I believe it was Judge Thompson pointed out, if it's interpreted the way the defendants want it interpreted, it swallows the whole. And an exception clause cannot do that. It would be inconsistent with the purpose of the act, the general purpose of the act, which is to make orders granting remand unreviewable. And it's very different from the Yamaha case that the Seventh Circuit relied on in Liu Junhong, which looked at Section 1292B's interlocutory appeal. That is discretionary with the district court judge, and it's discretionary with the Court of Appeals. And the only issue that 1292B addresses is when an otherwise appealable issue is considered by the Court of Appeals. 1447D, in contrast, generally makes all of the issues encompassed in an order granting remand unreviewable on appeal by writ or otherwise, by appeal or otherwise. And yet the interpretation that the defendants proffer here would flip that and would make all of the issues appealable as of right. Thank you, counsel. Additional questions from the panel? I have none. I'm good. All right. If you could go ahead and mute, and Mr. Boutros will hear from you on rebuttal. Thank you very much, Your Honor. First, let me start with this question of the government purpose, both with respect to the Outer Continental Shelf leases and Elk Hill. These weren't just typical commercial contracts, even though those could give rise to federal office or removal jurisdiction. The Outer Continental Shelf statute says, first of all, this is federal government-owned oil on government property subject to federal law. The reason that there was a command that the Secretary of Interior produce oil at maximum rates was to achieve national economic and energy policy goals, assure national security, and reduce dependence on foreign sources. That's 43 U.S.C. Section 1801. There was a command to the federal executive branch by Congress to extract oil to protect our nation's national security. The way that the government did that was to enter into these leases that give the Secretary of the Interior the power to determine how much oil will be extracted, where it will be extracted, the timing, the rate, and the ability to take that oil directly for government purposes. But that is a quintessential federal office or removal situation. What is your best case on this point? I would say, Your Honor, the Baker case from the Seventh Circuit that was decided in June of 2020. We submitted a 28-J letter. Baker is really important, Your Honor, because it demonstrates that the Ninth Circuit and the Fourth Circuit and the Tenth Circuit applied the wrong standard of review as to federal office or removal. The court there correctly said that the well-pleaded complaint rule does not apply, the statute is to be liberally construed, and not grudgingly. This court has said the same thing and that it's a pleading standard, so are our allegations plausible, just like you would look at a complaint? The court said, quoting the Acker case from the Supreme Court, the defendant doesn't have to prove an airtight case on the merits. Mr. Sher went on with his interpretation of the Elk Hills contract. We disagree with that. We've alleged that Standard Oil was acting hand-in-hand with the government during wartime. The GAO report we cited on page 3 says specifically that in 1945, the year after President Roosevelt signed on to the contract with Standard, crude oil production from the field continued at various levels and reached a peak of 65,000 barrels per day in 1945 at the height of World War II. In the Baker case, I think it's very similar because we went back in time, but the Outer Continental Shelf activity is happening right now. This is a national security purpose being implemented by the government by deputizing private companies, and that's been going on for many years. I think I interrupted Judge Thompson, I'm sorry. Do you consider this logging on public land the equivalent? Not necessarily, Your Honor. It could if there was a statute commanding the Secretary of the Interior to make sure for national security purposes or otherwise to engage in logging. This is really different. This is unique. Let me ask you this. Sure. Is it your position that if, in fact, as alleged, you mischaracterized and misrepresented information that would have been critical to the government's decision making, it's still a federal governmental issue? Yes, Your Honor. First, I have to say the federal government had all the information and knew the effects of oil and gas production, but because oil and gas is so important to national security, all the laws encourage production, so it's really inconsistent with their theory. But the Baker case, I keep going back to it because from the Seventh Circuit, it made this exact point, Your Honor. But your argument sort of embraces the notion that they encourage production, but they also encourage misrepresentation. I'm having a hard time trying to reconcile that. Your Honor, the test is whether the complaint is alleging actions that relate to the relationship between the defendant and the special relationship in the federal government. And the Baker case said that the complaint doesn't need to allege that the complaint of conduct itself was at the behest of the federal agency. There just needs to be a connection or an association. That's enough for federal officer removal. So that's the test, and that's, again, why I think the Ninth Circuit, the Fourth Circuit went wrong on this point. The complaint doesn't have to say you and the federal government engaged in some misrepresentation scheme together. It alleges that in connection with the activities of oil production for the federal government on federal land for national security purposes, that's swept in by this complaint. That's all that is required. Thank you, Your Honor. So, Mr. Boutros and Mr. Scherr, thank you very much for your arguments. We'll take the case under advisement, and we'll get a decision out to you. Thank you so much. Before we go, I think we're still sister circuits rather than sibling circuits. We've got to give women something, okay? I second the motion. I stand corrected. Thank you, Your Honors. Thank you all. That concludes the arguments for today. The session for the Honorable United States Court of Appeals is now recessed until the next session of the Court. God save the United States of America and this honorable Court.